UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF INGRAM BARGE COMPANY LLC D/B/A INGRAM BARGE COMPANY, AS OWNER AND OPERATOR OF BARGE IB976, PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 20-00313-BAJ-SDJ |

### RULING AND ORDER

Before the Court is the **Motion for Summary Judgment as to Lack of Seaman Status (Doc. 63)** filed by Claimants T.T. Barge Cleaning Mile 183, L.L.C. and T.T. Barge Services Mile 237 LLC (collectively "T.T. Barge") asserting that Claimant Gregory Ratcliff is precluded from bringing any claims for negligence under the Jones Act and unseaworthiness under the general maritime law. The motion is opposed. (Doc. 64). T.T. Barge filed a sur-reply. (Doc. 67).

I. BACKGROUND

This is a maritime action. T.T. Barge operates barge repair and cleaning facilities along the Mississippi River. (Doc. 63-1, p. 5). The T.T. Barge facilities consist of office buildings, two floating work platforms, and shoreside equipment and tanks. (Doc. 63-1, p. 5). The two floating work platforms are composed of three decommissioned work barges that are permanently moored to the shore by 1 ¼ inch thick steel cables connected to sunken concrete blocks, approximately ten feet in length. (Doc. 63-3, p. 4).

Ratcliff was employed by T.T. Barge as a barge cleaner at the Mile 183 facility. (Doc. 63-2, p. 10). As a barge cleaner, most of Ratcliff's work took place either on land, on floating work platforms permanently moored to the shore, or on customer barges secured to the floating work platforms. (Doc. 63-2, p. 43). Ratcliff took regular breaks throughout the day, either in the break room on land or under a shed on the work platform. (Doc. 63-2, p. 32). Ratcliff never sailed with a customer barge after cleaning it. (Doc. 63-2, p. 53). In fact, T.T. Barge policy prohibited Ratcliff from being present on a moving vessel at any time. (Doc. 63-3. p. 6).

Ratcliff claims that while employed by T.T. Barge as a Jones Act seaman, he was assigned to clean the inside of a barge that was owned by Ingram Barge Company LLC. (Doc. 64). Ratcliff alleges that he suffered chemical burns while cleaning caustic soda from the inside of tank barge IB976 while it was secured to the floating work platform at the Mile 183 facility on the west bank of the Mississippi River. *See* (Doc. 63-1).

## II. LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. E.g., *Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

### III. DISCUSSION

The Jones Act provides that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman, may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104.

3

The Supreme Court of the Unites States has instructed that Jones Act jurisdiction is not contingent "on the place where the injury is inflicted;" rather, it is dependent on the "nature of the seaman's service, his status as a member of the crew, and his relationship as such to the vessel and its operation in navigable waters." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 348, 115 S. Ct. 2172, 2182, 132 L. Ed. 2d 314 (1995) (quoting *Swanson v. Marra Brothers, Inc.*, 328 U.S. 1, 4 (1946)).

Here, Ratcliff must satisfy two requirements to establish that he qualifies as a seaman under the Jones Act. First, he must show that his employment duties contributed "to the function of the vessel or to the accomplishment of its mission." *Chandris*, 515 U.S. at 353. This is a very broad threshold and "it is difficult to imagine a case in which a worker performs substantial work on a vessel without contributing to its mission." *Gage v. Canal Barge Co., Inc.*, 431 F. Supp. 3d 754, 761 (M.D. La. Jan. 3, 2020). Second, he must establish an employment-related connection to a vessel, or an identifiable group of fleet of vessels under common ownership or control, that is both substantial in terms of duration and nature. *Chandris*, 515 U.S. at 368. The United States Court of Appeals for the Fifth Circuit articulated three factors to consider when determining the substantial connection element:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
> (2) Is the work sea-based or involve seagoing activity?
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

*Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 574 (5th Cir. 2021).

### 1. T.T. Barge Work Platforms

T.T. Barge maintains that its work barges form a permanently moored work platform and are not vessels in navigation. (Doc. 63-1, p. 6). Under the Jones Act and general maritime law, a vessel "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 491 (2005) (quoting 1 U.S.C. § 3). A structure will not qualify as a vessel unless "a reasonable observer, looking to the structure's physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Id.* at 121. Relevant physical characteristics can include the structure's capacity for self-propulsion, existence of steering mechanisms, and capacity to generate or store electricity. *Id.* at 121-22.

Here, T.T. Barge's work platforms do not qualify as vessels. The work platforms are permanently moored to the shore by steel cables. They are only moved to make repairs or to accommodate dredging operations and are not documented as vessels by the U.S. Coast Guard. (Doc. 63-3, p. 4). Thus, Ratcliff cannot rely on his relationship to the work platforms to claim status as a Jones Act seaman.

### 2. Ingram Barge's Fleet

Ratcliff also asserts seaman status because he has a "substantial connection" to the Ingram Barge fleet, one of T.T. Barge's customers. (Doc. 64, p. 12). Ratcliff alleges he spent a substantial percentage of his time working on Ingram's barges. (Doc. 64, p. 13). He also alleges that Ingram's fleet was one of only four or five

companies that he could identify working on at the facility. (Doc. 64, p. 13). However, T.T. Barge asserts that Plaintiff's claim must fail because Ratcliff "worked on barges owned by many different customers. . . and was temporarily assigned to work on different customer's barges at random." (Doc. 63-1, p. 23).

Applying the Fifth Circuit's *Sanchez* test, the Court must conclude that Ratcliff owes his allegiance not to any specific vessel, but to a shoreside employer. He drove to the T.T. Barge facility each morning and received his assignment from supervisors who also worked for T.T. Barge not Ingram. (Doc. 63-1, p. 9). His work was clearly not sea-based and did not involve seagoing activity. Ratcliff only worked on vessels that were docked. He even admits that the injury occurred on a barge that was tied to a platform and was not at sea at the time of his injury. (Doc. 64, p. 13). Ratcliff only entered the vessels to clean them and not while the vessel performed any transportation activities. Further, he never sailed with a vessel from port to port and was not a member of any vessel's crew. (Doc. 63-2, p. 51).

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment as to Lack of Seaman Status (Doc. 63) filed by Claimants T.T. Barge Cleaning Mile 183, L.L.C. and T.T. Barge Services Mile 237 LLC is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims for Jones Act negligence and unseaworthiness asserted by Claimant George Ratcliff within this Limitation of Liability action are hereby **DISMISSED.**

Baton Rouge, Louisiana, this 12th day of May, 2022

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**