## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF INGRAM BARGE COMPANY LLC D/B/A INGRAM BARGE COMPANY, AS OWNER AND OPERATOR OF BARGE IB976, PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 20-00313-BAJ-SDJ |

### RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 68)** filed by Ingram Barge Company, LLC seeking the dismissal of all claims by Gregory Ratcliff in this action against it. The motion is opposed. (Doc. 69). Ingram filed a sur-reply. (Doc. 71).

### I.    BACKGROUND

This action arises out of injuries Claimant Gregory Ratcliff, an employee of T.T. Barge, allegedly sustained while cleaning caustic soda residue from a barge owned by Ingram Barge Company. T.T. Barge is one of the best-known and largest barge cleaning and repair companies in Louisiana. (Doc. 72, p. 3). T.T. Barge regularly cleans both hazardous and nonhazardous cargo residue from tank barges, including caustic soda. (Doc. 72, p. 3).

In July 2019, Ingram hired T.T. Barge to clean barge IB976. (Doc. 72, p. 3). Ingram is the owner and operator of barge IB976. (Doc. 72, p. 1). Ingram notified T.T. Barge that the barge's last cargo was caustic soda. (Doc. 72, p. 3). Both Ingram's Order Form and T.T. Barge's Job Sheet identified the ship's last cargo as "caustic." (Doc. 72,

1

p. 3). Thereafter, Ingram delivered the barge to T.T. Barge's Mile 183 cleaning facility. (Doc. 72, p. 4). After the barge was delivered, no Ingram employees remained on the barge or at the facility. (Doc. 72, p. 4). T.T. Barge employees confirmed that the barge had all required paperwork and placards onboard, and photographed the inside of the barge. (Doc. 72, p. 4).

On July 31, 2019, Ratcliff reported to work at the Mile 183 facility and received his assignment from T.T. Barge foreman Kevin Henry. (Doc. 72, p. 3). Ratcliff testified that he knew IB976's last cargo was caustic soda:

> Q. On the day of your accident, July 31st, 2019, do you recall what your assignment was that you received from the foreman in your morning meeting?
> A. Yes. I was -- We were informed that we had a caustic barge that was frozen, that was iced up, and that we were gonna go inside the barge and try to break the ice up inside of it to get it clean.

(Doc. 69-2, p. 40). To clean the barge, Ratcliff was required to remove the large chunks of frozen caustic soda and to place them into buckets. (Doc. 72, p. 3). Henry testified that both T.T. Barge and Ratcliff previously cleaned caustic soda before cleaning IB976. (Doc. 68-1, p. 4).  Prior to the crew entering the tank, Henry used a hose to spray the inside of the tank hold to break up the frozen caustic soda. (Doc. 68-9, p. 7). Henry also used a hose to spray the ceiling of the barge while the crew was inside, causing caustic soda residue to drip from the ceiling. (Doc. 68-9, p. 7).

Ratcliff alleges that he suffered chemical burns while cleaning caustic soda from the inside of tank barge IB976 on two occasions. (Doc. 72, p. 3). He alleges that when breaking for lunch he noticed that caustic soda residue from the ceiling penetrated his protective equipment, leaving caustic soda residue on his left bicep

2

and left calf. (Doc. 72, p. 4). Ratcliff was wearing a slicker suit, rubber boots, gloves, and a full-face respirator, provided to him by T.T. Barge. (Doc. 72, p. 4). Ratcliff told Henry about the caustic soda residue on his left bicep and left calf. (Doc. 72, p. 4). Henry instructed him to return to the office and rinse the affected areas with vinegar. (Doc. 72, p. 4). As directed, Ratcliff then returned to the office, washed the affected areas with vinegar, and donned a new slicker suit. (Doc. 72, p. 4).

Ratcliff further alleges that near the end of his shift he slipped in a puddle of caustic soda residue, causing chemical burns to his groin, abdomen, inner thigh, and more extensive burns to his left leg and left arm and his face. (Doc. 72, p. 4). He reported to Michael Weber, the foreman who relieved Henry, that caustic soda was "all over [him]" and that he needed to leave and would not be able to continue working. (Doc. 68-9, p. 8). After some back and forth, Ratcliff was allowed to leave the barge. *Id.* However, Ratcliff did not immediately seek medical attention. (Doc. 72, p. 5). Rather, he simply returned home and took a shower. *Id.* However, Ratcliff later sought treatment for his injuries at an area hospital. (Doc. 69-2, p. 61).

## II.   LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences

3

drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. E.g., *Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

## III.  DISCUSSION

The right of ship repairers, longshoremen, and other persons covered by the Longshore and Harbor Workers' Compensation Act to sue a vessel owner for negligence arises exclusively under 33 U.S.C. § 905(b). "Under §905(b), the same

worker may pursue a tort action against the owner of a vessel for acts of negligence."
*Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 531 (5th Cir.1991).

Section 905(b) makes clear that the vessel owner may not be sued when the injury was caused by the negligence of those performing stevedoring services. 33 U.S.C. § 905(b); *Levene*, 943 F.2d at 532. The primary responsibility for longshoremen's safety rests with the stevedore. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir.2007) (quoting *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir.1996)). However, following *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), the United States Court of Appeals for the Fifth Circuit recognized limited circumstances where a vessel owner may be liable to a longshoreman injured during stevedoring operations:

> 1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
> 2) for injury caused by hazards under the control of the ship.
> 3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Robinson*, 505 F.3d at 365 (quoting *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 15 (5th Cir.1992)).

In his opposition, Ratcliff again asserts that he is a Jones Act Seaman; however, the Court previously determined that Ratcliff is not a Jones Act Seaman. *See* (Doc. 71). Accordingly, the Court will not address this argument.

Ratcliff also failed to address either the active control duty or the duty to intervene. *See* Doc. 69-1. This Court has repeatedly warned that a party waives an

issue by failing to brief it. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Moreover, the Local Civil Rules require that parties support their arguments with "a concise statement of reasons. . .and citations of authorities," M.D. La. LR 7(d), and this Court has repeatedly admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf. *See N. Frac Proppants, LLC v. Regions Bank, NA*, No. 19-cv-00811, 2022 WL 1297180, at *8 n.9 (M.D. La. Apr. 29, 2022) (Jackson, J.) (citing authorities). Accordingly, the Court only addresses the turnover duty below.

### a. Turnover Duty

The turnover duty "relates to the condition of the ship upon the commencement of stevedoring operations." *Howlett v. Birkdale Shipping, Co., S.A.*, 512 U.S. 92, 98 (1994). This duty can be separated into (1) "a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such a condition that an expert stevedore can carry on stevedoring operations with reasonable safety," and (2) "a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008). "[T]he duty to warn is a narrow one; it does not include dangers that are 'open and obvious' dangers or those that 'a reasonably competent stevedore should anticipate encountering." *Sobrino-Barrera v. Anderson Shipping, Co.*, 495 F. App'x 430, 433-34 (5th Cir. 2012) (quoting *Kirksey*, 535 F.3d at 392).

Courts within the Fifth Circuit have repeatedly recognized that a vessel owner is not required to warn of or repair a harmful condition which causes injury to a

person hired to repair that condition. *Casaceli v. Martech Inter.*, Inc., 774 F.2d 1322, 1330 (5th Cir.1985) (quoting *Stass v. Am. Commercial Line, Inc.*, 720 F.2d 879, 883 (5th Cir.1983) ("[A] ship may not be found negligent merely because a condition of the ship that requires repair or inspection injures the person hired to inspect or repair that condition.") (internal quotations omitted) *Hill v. Texaco, Inc.*, 674 F.2d 447, 452 (5th Cir. 1982) ("we hold only that a ship may not be found negligent merely because a condition of the ship that requires repair or inspection injures the person hired to inspect or repair that condition").

In *Rose v. Cargill*, No. 14-2406, 2015 WL 4042151 (E.D. La. July 1, 2015), a district court granted summary judgment in favor of the barge owner when the plaintiff was injured by the same soybeans he was hired to clean up. The plaintiff, a "barge washer," sued the barge owner for injuries he sustained after slipping on soybeans located on the deck of the barge. *Id.* The court unequivocally stated that it is undisputed that Plaintiff was hired to clean up the same soybeans on which he allegedly slipped. *Id.* Plaintiff cannot, therefore, successfully assert that the barge owner owed him a duty to clean the soybeans prior to his boarding the barge. *Id.* at *5.

In this case, it is undisputed that T.T. Barge was hired to clean caustic soda from IB976. It is also undisputed that T.T. Barge foreman Kevin Henry assigned Ratcliff to clean caustic soda from the barge. Ratcliff only disputes that he did not know the caustic soda was "frozen." (Doc. 69-1, p. 10). However, Ratcliff testified he knew he was supposed to clean "frozen" caustic soda inside the barge:

7

> Q. On the day of your accident, July 31st, 2019, do you recall what your
> assignment was that you received from the foreman in your morning
> meeting?
> A. Yes. I was -- We were informed that we had a caustic barge that was
> frozen, that was iced up, and that we were gonna go inside the barge
> and try to break the ice up inside of it to get it clean.[1]

(Doc. 69-2, p. 40). Moreover, Henry informed Ratcliff that "IB976 had carried caustic

soda and that the caustic soda residue was 'frozen. . .iced up'" and their job was to

"break up the iced caustic soda." (Doc. 68-9, p. 6). Thus, by his own admission Ratcliff

was fully aware the caustic soda was "frozen" prior to entering the barge.  Therefore,

Ingram had no duty to warn Ratcliff of a danger that was known to him.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Ingram Barge Company LLC's Motion for Summary

Judgment (Doc. 68) filed by Ingram Barge Company LLC is **GRANTED**.


Baton Rouge, Louisiana, this _____ day of August, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE *DISTRICT* OF LOUISIANA**

---

[1] The Court finds Ratcliff's argument nonsensical as he openly admits in his deposition that
he knew prior to entering the barge that the caustic soda was frozen.